FILED

09/28/2020

Clerk, U.S. District Court
District of Montana
Great Falls Division

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA  DIVISION

| | |
|---|---|
| WENDY RAHN,<br><br>                Plaintiff,<br><br>vs.<br><br>MONTANA RAIL LINK BENEFIT PLAN, WASHINGTON CORPORATIONS, and JOHN DOES 1-5,<br><br>                Defendants. | CV 19-141-M-JTJ<br><br>**MEMORANDUM<br>AND ORDER** |

## INTRODUCTION

Plaintiff Wendy Rahn (Rahn) brings this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §1132(a)(1)(B). Rahn seeks a declaration that she was wrongfully denied medical benefits under an employer-sponsored health benefits plan administered by Defendant Washington Corporations (Washington Corp.). The parties have filed cross-motions for summary judgment. The Court conducted a hearing on the motions on August 27, 2020. The Court is prepared to rule.

## BACKGROUND

Rahn is a woman in her early forties. Rahn suffers from a significant and worsening degenerative condition in her cervical spine. Rahn's husband works for

Montana Rail Link.  Montana Rail Link funds a health benefit plan known as the Montana Rail Link Medical Benefit Plan (Plan).  The Plan is regulated by ERISA. Rahn participates in the Plan as an eligible dependent of a Montana Rail Link employee.

Defendant Washington Corp. is the Plan Administrator.  Washington Corp. possesses the authority to review and make final decisions on all claims for benefits made by Plan participants.  Allegiance Benefit Plan Management Inc. (Allegiance) is the Plan Supervisor.  Allegiance reviews claims made by Plan participants and makes claims recommendations to Washington Corp.

Rahn began receiving physical therapy for pain in her right shoulder and neck on September 14, 2015, at Big Sky Physical Therapy in Missoula, Montana. (Doc. 16-1 at 268).  Licensed physical therapist Dawn Christian (Christian) provided the physical therapy.  (Doc. 16-1 at 270).  Christian provided physical therapy treatments to Rahn for several years.  Rahn had her 33rd physical therapy treatment for cervical brachial pain on January 18, 2018.  (Doc. 16-1 at 297).  The treatment diagnosis on that date was "pain in right shoulder, pain in right upper arm, low back pain, pain in right wrist, pain in right hand and pain in left hand." *Id.*

Neurosurgeon Dr. Chriss Mack evaluated Rahn on September 5, 2017, regarding her persistent issues with cervical brachial pain in her upper back and neck.  (Doc. 16-1 at 196).  An MRI revealed degenerative disc disease at C3-4, 5-6, and 6-7, and a significant bilateral C6 nerve root compression.  (Doc. 16-1 at 199).  Dr. Mack determined that fusion surgery was not a good option given Rahn's relatively young age.  *Id.*  Dr. Mack referred Rahn to the Providence Medical Group Spine and Pain Center.  (Doc. 16-1 at 200).

Dr. Christopher Caldwell of the Providence Medical Group Spine and Pain Center evaluated Rahn in response to Dr. Mack's referral.  (Doc. 16-1 at 378).  Dr. Caldwell administered steroid injections which did not relieve Rahn's symptoms. Dr. Caldwell diagnosed Rahn with "[c]hronic right-sided low back pain with right-sided sciatica" [and] right hip pain."  (Doc. 16-1 at 379).

Dr. Caldwell referred Rahn to Christian for physical therapy on her lower back in early February 2018.  (Doc. 16 at 5-6).  Dr. Caldwell instructed Christian to address: "posture, muscle imbalance, core stabilization as indicated, and progress to independent home exercise program with minimal use of modalities." (Doc. 16-1 at 379).

Rahn had her first physical therapy visit for her lower back pain on February 26, 2018.  (Doc. 16-1 at 364).  Christian diagnosed Rahn with right-sided

-3-

lumbago with sciatica, right hip pain, and other chronic pain. *Id.* Christian developed a 12 week physical therapy plan that included therapeutic exercises, therapeutic activity, neuromuscular rehabilitation, and manual therapy. (Doc. 16-1 at 365). Both Dr. Caldwell and Christian certified that the treatment plan was medically necessary. *Id.* Rahn received 3 physical therapy treatments for her lower back during the time period from February 26, 2018, through April 26, 2018. (Doc. 16-1 at 71).

The Plan provides coverage for physical therapy so long as the physical therapy is ordered by a physician, rendered by a licensed physical therapist, and meets the Plan's definition of "medically necessary." (Doc. 16-2 at 23, 93). The Plan defines the terms "medically necessary" and "medical necessity" as "treatment[s], tests, services or supplies" that meet all of the following criteria:

1. [They] are to treat or diagnose an Illness or Injury; and

2. [They] are ordered by a Physician or Licensed Health Care Provider and consistent with the symptoms or diagnosis and treatment of the Illness or Injury; and

3. [They] are not primarily for the convenience of the Covered Person, Physician or other Licensed Health Care Provider; and

4. [They] are the standard or level of services most appropriate for good medical practice that can be safely

provided to the Covered Person and are in accordance
with the Plan's Medical Policy; and

5.      [They] are not of an Experimental/Investigational or
        solely educational nature; and

6.      [They] are not provided primarily for medical or other
        research; and

7.      [They] do not involve excessive, unnecessary or repeated
        tests; and

8.      [They] are commonly and customarily recognized by the
        medical profession as appropriate in the diagnosis or
        treatment of the diagnosed condition; and

9.      [They] are approved procedures or meet required
        guidelines or protocols of the Food and Drug
        Administration (FDA) or Centers For
        Medicare/Medicaid Services (CMS), pursuant to that
        entity's program oversight authority based upon the
        medical treatment circumstances.

(Doc. 16-2 at 93-94).

On April 10, 2018, Allegiance questioned whether the physical therapy

prescribed by Dr. Caldwell was medically necessary.  Allegiance sought an

independent medical review.  Allegiance hired Dr. Akhil Chhatre of the Medical

Review Institute of America, LLC, to conduct the external review.

Dr. Chhatre issued his report on April 13, 2018.  (Doc. 16-1 at 207-209).

Dr. Chhatre concluded that the physical therapy that Dr. Caldwell had prescribed

for Rahn in February 2018 was not medically necessary. (Doc. 16-1 at 207). Dr. Chhatre stated that the physical therapy was not medically necessary because Rahn had received physical therapy for right shoulder pain in the past, she "ha[d] not demonstrated progress in the physical therapy already administered," and she "continue[d] to complain of the same pain despite attending physical therapy." (Doc. 16-1 at 207-08). Unfortunately, Dr. Chhare did not recognize that the physical therapy that Dr. Caldwell had prescribed in February 2018 was for Rahn's lower back, not her right shoulder.

Washington Corp. adopted Dr. Chhare's findings. Washington Corp. informed Rahn that the Plan did not cover the physical therapy prescribed by Dr. Caldwell because the therapy was not medically necessary. (Doc. 16-1 at 210).

Rahn appealed the Plan's decision on May 4, 2018. The appeal documents that Rahn submitted included a letter from Christian dated April 26, 2018. (Doc. 16-1 at 71). Christian explained in her letter that the physical therapy that Dr. Caldwell had prescribed in February 2018 was for Rahn's lower back, not her neck and shoulders. *Id.* Christian stated:

> "Wendy Rahn has received physical therapy treatment at Big Sky Physical therapy for her right thumb, right elbow, neck, and low back. She was initially evaluated for her right thumb on 9/14/15 post surgery. With the evaluation I found her symptoms were related to her

-6-

right elbow, shoulder, and neck.  Since receiving skilled
physical therapy treatment she is able to perform her
activities of daily living, lift weights for her UEs which
will improve/keep the health of her bones, tendons, and
joints and live an active life.  She does not want to resort
to taking medications or have surgery to relieve the pain.
These treatments have repercussions and at her young
age she is being proactive with her health.

She was evaluated for back pain on 2/26/18.  Treatment
is currently being provided for her back to increase
lumbopelvic stability so she can remain active and keep
healthy with cardiovascular exercise.  She has only
received 3 treatments to date for her back, however; she
would benefit from continued treatment to establish a
home exercise program.

(Doc. 16-1 at 71).

Allegiance responded to the appeal by requesting a second medical review

on May 21, 2018.  (Doc. 16-1 at 55).  Allegiance hired Dr. Behzad Emad of

Medical Consultants Network to conduct the second medical review.  Dr. Emad

issued his decision on May 25, 2018.  (Doc. 16-1 at 50-53).  Dr. Emad concluded

that the physical therapy did not satisfy the Plan's definition of "medically

necessary."  (Doc. 16-1 at 52).  Dr. Emad concluded that the physically therapy

did not satisfy the Plan's definition of "medically necessary" because:

> 1.   The record contained no documentation showing
>      that the physical therapy had been "ordered by [a]
>      Physician or Licensed Health Care Provider;" and

-7-

2.    The record contained no documentation showing
that Rahn had made "significant improvement"
from the 33 physical therapy treatments that she
had received prior to February 27, 2018.

(Doc. 16-1 at 51-52).  Unfortunately Dr. Emad, like Dr. Chhare, did not recognize

that the 33 physical therapy treatments that Rahn had received prior to February

27, 2018, were treatments for her neck and shoulders, not her lower back.  Dr.

Emad also erred when he stated that the record contained no documentation

showing that the physical therapy for which Rahn sought coverage had been

prescribed by a Physician.  Dr. Emad's statement was erroneous because the

medical records that had been provided to Dr. Emad included Dr. Caldwell's

March 27, 2018, outpatient referral that prescribed physical therapy for Rahn's

lower back.  (Doc. 16-1 at 50).

Washington Corp. adopted Dr. Emad's decision.  Allegiance informed

Rahn, by letter dated June 1, 2018, that the physical therapy was not medically

necessary.  Allegiance stated that the physical therapy was not medically necessary

because the record "lack[ed] documentation to support the treatment."  (Doc. 16-1

at 49).

Rahn appealed the Plan's decision on June 22, 2018.  (Doc. 16-1 at 47).

Rahn argued that the Plan's decision was based on erroneous facts.  Rahn argued

-8-

that the Plan's decision was based on erroneous facts because the record did, in fact, contain a document showing that physical therapy had been ordered by Dr. Caldwell, and the record also contained a document showing that both Dr. Caldwell and Christian had certified the physical therapy on Rahn's lower back as medically necessary. *Id.*

Allegiance responded to the appeal by requesting a "2nd level appeal" on June 29, 2018. (Doc. 16-1 at 37). Allegiance hired AllMed Healthcare Management to conduct the independent medical review. (Doc. 16-1 at 26). Dr. Andrew Gallo and Dr. David Spiro completed the medical review on July 4, 2018. (Doc. 16-1 at 25-28). Dr. Gallo and Dr. Spiro were the first peer reviewers to recognize that Rahn was requesting coverage for physical therapy on her lower back. Dr. Gallo and Dr. Spiro concluded that physical therapy that Dr. Caldwell had prescribed for Rahn's lower back was medically necessary. (Doc. 16-1 at 26). Dr. Gallo and Dr. Spiro concluded that the physical therapy was medically necessary because the physical therapy met the Plan's definition of "medical necessity" in all respects. (Doc. 16-1 at 26-27). Dr. Gallo and Dr. Spiro stated that 2 to 3 physical therapy treatments on Rahn's lower back were warranted to establish a home exercise program. (Doc. 16-1 at 27).

Allegiance informed Washington Corp. on July 6, 2018, that Washington Corp. was responsible for making the final decision on Rahn's "2nd level appeal." (Doc. 16-1 at 14).

Washington Corp. informed Rahn of its coverage decision by letter dated July 19, 2018. (Doc. 16-1 at 13). Washington Corp. stated that it was denying coverage for the physical therapy prescribed by Dr. Caldwell because the physical therapy did not meet the "[P]lan's definition of medical necessity." *Id.* Washington Corp. failed to explain, however, why the physical therapy did not meet the Plan's definition of medical necessity. Washington Corp. also failed to explain why it had rejected the findings of Dr. Gallo and Dr. Spiro that physical therapy on Rahn's lower back did, in fact, meet the Plan's definition of "medical necessity." (Doc. 16-1 at 27).

Rahn appealed the Plan's decision on September 7, 2018. Allegiance hired ProPeer to conduct another external review. ProPeer sent Rahn a letter on September 21, 2018, informing Rahn that she could submit "additional information to be considered in the review process." (Doc. 16-1 at 8). Dr. Caldwell sent a letter to ProPeer on Rahn's behalf, on September 27, 2018. (Doc. 16-1 at 9). Dr. Caldwell stated:

"Wendy Rahn is a patient who has been under may care
at the Montana Spine and Pain Center in Missoula.
Wendy is being treated for severe cervical stenosis with
nonsurgical treatment as we are trying to avoid all
multilevel cervical fusion in this 42-year-old female.  It
is therefore my opinion that it is medically necessary for
her to have maintenance physical therapy to postpone
surgical intervention."

Please feel free to call, if you have any questions or if we
can be of further assistance."

*Id.*  Dr. Caldwell's letter was not particularly helpful.  Dr. Caldwell failed to

explain that the physical therapy he had prescribed for Rahn in February 2018 was

for Rahn's lower back, not for her upper extremities.

ProPeer made its decision on Rahn's claim on October 26, 2018.  (Doc. 16-
1 at 1).  ProPeer opined that the physical therapy prescribed by Dr. Caldwell was

not medically necessary.  *Id.*  ProPeer concluded that the physical therapy was not

medically necessary for two reasons:

1.     Rahn had not seen "significant objective functional improvement" in
       her "right shoulder and low back" despite having "33 physical
       therapy visits" as of January 18, 2018; and

2.     The "medical literature" did not support the physical therapy.

(Doc. 16-1 at 3).  Unfortunately, ProPeer, like Drs. Chhatre and Emad, failed to

recognize that the 33 physical therapy treatments that Rahn had received during

the period from September 14, 2015, through January 18, 2018, was for her neck

-11-

and shoulders, not her lower back.  Washington Corp. adopted ProPeer's opinion as its final decision.

Rahn filed the present action seeking judicial review of Washington Corp.'s final decision on August 22, 2020.  (Doc. 1).  Rahn alleges that Washington Corp. breached the terms of the Plan when it denied her claim for physical therapy on her lower back on grounds the physical therapy was not medically necessary. Rahn seeks a declaration that the physical therapy is covered under the Plan.  Rahn seeks a monetary award for the value of the physical therapy that was prescribed by Dr. Caldwell and denied by Washington Corp.  Rahn also seeks reasonable attorney's fees and costs.

The parties agree that this matter may be properly resolved by the Court on cross-motions for summary judgment based on the administrative record.

## DISCUSSION

### A.   Standard of Review

ERISA does not specify the appropriate standard of review.  Federal courts have developed a body of common law that supplies the appropriate standard of review.  The standard of review that a court employs depends on whether the plan explicitly grants the administrator discretion to interpret the plan's terms and determine eligibility for benefits.  *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d

955, 969 (9th Cir. 2006).  If the plan does not give the plan administrator

discretionary authority to determine eligibility for benefits, the administrator's

decision to deny benefits is reviewed "under a *de novo* standard." *Firestone Tire*

*and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the plan gives the plan

administrator discretionary authority to determine eligibility for benefits, the

administrator's decision is reviewed for an abuse of discretion. *Gatti v. Reliance*

*Standard Life Ins. Co.*, 415 F.3d 978, 981 (9th Cir. 2005).

Here, the parties agree that the Plan gave Washington Corp. full

discretionary authority to interpret all provisions of the Plan and to resolve all

issues concerning a Plan participant's eligibility for benefits.  (Doc. 15 at 10; Doc.

23 at 2; Doc. 16-2 at 116).  The Court will therefore review Washington Corp.'s

decision to deny Rahn's claim under an abuse of discretion standard.

The Court must next consider whether Washington Corp. was operating

under a structural conflict of interest.  A structural conflict of interest exists if a

plan administrator both determines a participants eligibility for benefits and pays

those benefits out of its own funds. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S.

105, 112 (2008).  When a court finds that a conflict of interest exists, the court

must consider the conflict of interest when it determines whether the administrator

-13-

has abused its discretion. *Montour v. Hartford Life & Accident. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009).

Here, Rahn argues that a conflict of interest may exist because Washington Corp. and Montana Rail Link share the same address and presumably the same financial interests. (Doc. 15 at 11). Rahn has presented no evidence, however, that an actual conflict of interest exists. Rahn has presented no evidence that Washington Corp. paid any benefits to Plan participants out of its own funds. The Court, therefore, must employ a "straightforward abuse of discretion analysis." *Pacific Shores Hospital v. United Behavioral Health*, 764 F.3d 1030, 1042 (9th Cir. 2014).

The abuse of discretion standard is equivalent to an arbitrary and capricious standard of review. *Tapley v. Locals 302 and 612 of the International Union of Operating Engineers — Employers Construction Industry Retirement Plan*, 728 F.3d 1134, 1139 (9th Cir. 2013). Under an abuse of discretion standard, the central question before the court is whether the administrator's decision was unreasonable. *Pacific Shores*, 764 F.3d at 1042; *Montour*, 588 F.3d at 629-630.

An ERISA plan administrator abuses its discretion when the administrator: arbitrarily rejects reliable evidence that favors benefit eligibility without explanation; makes a decision that conflicts with the plain language of the plan; or

-14-

makes a decision based on clearly erroneous findings of fact. *Pacific Shores*, 764

F.3d at 1042; *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

A finding of fact is clearly erroneous when the court "is left with the definite and

firm conviction that a mistake has been committed." *Boyd v. Bert Bell/Pete*

*Rozelle NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005).

## B.    Washington Corp.'s Decision to Deny Benefits to Rahn

Rahn argues that Washington Corp. abused its discretion when it

determined that the physical therapy that Dr. Caldwell prescribed for Rahn's lower

back was not medically necessary.  Rahn argues that Washington Corp. abused its

discretion in three ways.  Rahn argues that Washington Corp premised its decision

on clearly erroneous findings of fact.  Rahn argues that Washington Corp. failed to

explain why it arbitrarily rejected the credible opinions of Dr. Caldwell, Dr. Spiro,

Dr. Gallo and physical therapist Christian that physical therapy on Rahn's lower

back was medically necessary, and Rahn argues that Washington Corp.

misconstrued the Plan's definition of the term "medical necessity."  (Doc. 15 at

12-16).

### a.    Erroneous Findings of Fact

Washington Corp. relied on the peer review opinions of Dr. Chhatre, Dr.

Emad and ProPeer as the sole basis for denying coverage in this case.  Although a

plan administrator is entitled to rely on peer review opinions from physicians when making its coverage determination, the administrator may only rely on peer review opinions that "follow logically from the underlying medical evidence." *Wilcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 700-701 (8th Cir. 2009). A plan administrator abuses its discretion when it relies on opinions from medical reviewers that reflect an erroneous review of the medical evidence. *Wilcox*, 552 F.3d at 702-703; *Pacific Shores*, 764 F.3d at 1042.

In *Pacific Shores*, the Ninth Circuit found that a plan administrator had abused its discretion where the administrator had relied on medical reviews by physicians containing errors about the patient's weight and risk of suicide, among other things, that were contradicted in the record. *Pacific Shores*, 764 F.3d at 1033-1039. The Court noted a "striking lack of care" by the physicians. *Id.* at 1044.

Similarly, in *Wilcox*, the Eight Circuit held that a plan administrator abused its discretion where the administrator relied on the opinion of a reviewing physician that stated the medical record showed "no evidence of radiculopathy" when, in fact, the record contained several entries consistent with radiculopathy. *Wilcox*, 552 F.3d at 701.

-16-

Here, the opinions offered by Dr. Chhatre, Dr. Emad and ProPeer were based on clearly erroneous findings of fact. Dr. Chhatre, Dr. Emad and ProPeer all thought that the physical therapy that Dr. Caldwell had prescribed in February 2018 was designed to treat Rahn's cervical stenosis. Dr. Chhatre, Dr. Emad and ProPeer all opined that further physical therapy on Rahn's shoulder and neck was not medically necessary because Rahn had already received 33 physical therapy treatments on her shoulders and neck prior to January 18, 2018, without any significant improvement. (Doc. 16-1 at 3, 51-52, 207-208). The opinions of Dr. Chhatre, Dr. Emand and ProPeer were premised on erroneous facts because the physical therapy that Dr. Caldwell had prescribed in February 2018 was physical therapy for Rahn's lower back, not her shoulders and neck. The purpose of the physical was to stabilize Rahn's "lumbopelvic" region. (Doc. 16-1 at 71, 379).

Dr. Emad's opinion was also based on a second faulty premise. Dr. Emad stated that the physical therapy prescribed by Dr. Caldwell in February 2018 did not satisfy the Plan's definition of "medically necessary" because no "Physician or Licensed Health Care Provider" had "ordered" the physical therapy. (Doc. 16-1 at 52). As discussed above, the medical records presented to Dr. Emad included Dr. Caldwell's March 27, 2018, "Outpatient Referral Form" prescribing physical therapy for Rahn's lower back. (Doc. 16-1 at 378-380).

-17-

Washington Corp. abused its discretion when it denied Rahn's claim for physical therapy based on opinions from Dr. Chhatre, Dr. Emad and ProPeer, as those opinions were premised on clearly erroneous facts. *Wilcox*, 552 F.3d at 702-703; *Pacific Shores*, 764 F.3d at 1042.

> **b.    Washington Corp.'s Failure to Explain Why it Arbitrarily Rejected the Credible Opinions of Dr. Caldwell, Dr. Spiro, Dr. Gallo and Physical Therapist Christian**

In deciding whether to award benefits, a plan administrator may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. *Nord*, 538 U.S. at 834. Numerous courts have held that refusing to credit a claimant's reliable evidence without explanation is an abuse of discretion. See e.g., *Wilcox*, 552 F.3d at 701; *Bertelsen v. Hartford Life Insurance Co.*, 1 F. Supp. 3d 1060, 1071 (E.D. Cal 2014).

Here, Washington Corp. failed to address or even acknowledge the findings of Rahn's treating physician Dr. Caldwell and physical therapist Christian that physical therapy on Rahn's lower back was medically necessary. Similarly, Washington Corp. failed to address or even acknowledge the findings of Dr. Spiro and Dr. Gallo that physical therapy on Rahn's lower back satisfied the Plan's definition of "medical necessity."

Washington Corp. abused its discretion when it rejected, without explanation, the credible opinions of Drs. Caldwell, Spiro and Gallo and physical therapist Christian, that physical therapy on Rahn's lower back was "medically necessary." *Wilcox*, 552 F.3d at 701-702.[1]

### C.    Award of Benefits, Attorney's Fees and Costs

ERISA provides that a court may award past due benefits to a prevailing party, and clarify the prevailing party's rights to future benefits under the plan. 29 U.S.C. § 1132(a)(1)(B).  A court may also award reasonable attorney's fees and costs to a party that obtains "some degree of success."  29 U.S.C. § 1132(g)(1); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010).

Here, Rahn has shown that Washington Corp. wrongfully withheld benefits for the physical therapy that Dr. Caldwell prescribed for her lower back.  Rahn is therefore entitled to: benefits wrongfully withheld under the Plan; an order clarifying her rights, if any, to future physical therapy under the Plan; and an award of reasonable attorney's fees and costs.  29 U.S.C. §§ 1132(a)(1)(B), (g)(1). Rahn states that she intends "to submit information from her providers to allow the

---

[1] Given the Court's finding that Washington Corp. abused its discretion by relying on erroneous findings of fact, and by failing to explain why it arbitrarily rejected the credible opinions Drs. Caldwell, Spiro and Gallo and physical therapist Christian, the Court need not address Rahn's argument that Washington Corp. also abused its discretion by misconstruing the Plan's definition of "medical necessity."

Court to determine the amount of benefits due under the Plan." (Doc. 15 at 17-18).

To determine the amount to which Rahn is entitled, the Court will entertain submissions from the parties that describe: 1) the amount of benefits wrongfully withheld by Washington Corp; 2) the future benefits, if any, that Rahn is entitled to under the Plan; and 3) the amount of reasonable attorney's fees and costs that Rahn incurred in this matter.

Accordingly, IT IS HEREBY ORDERED:

1.      Plaintiff's Motion for Summary Judgment (Doc. 14) is GRANTED.

2.      Defendants' Motion for Summary Judgment (Doc. 22) is DENIED.

3.      On or before October 16, 2020, Rahn shall submit a brief describing the benefits she claims were wrongfully withheld by Washington Corp., and any future benefits she claims are due under the Plan. The brief should be supported by affidavits and other documentation showing how any claimed benefit amount was computed. Defendants may file a response brief on or before October 30, 2020.

4.      On or before October 16, 2020, Rahn shall submit a request for attorney's fees and costs, supported by an affidavit and time sheet.

Defendants may file a response brief on or before October 30, 2020.

DATED this 28th day of September, 2020.

John Johnston
United States Magistrate Judge